## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                      CASE NO. 6:17-bk-04444-CCJ

THE GARDENS, LLC                            CHAPTER 11

       Debtor.

_____/


## PLAN OF REORGANIZATION FOR THE GARDENS, LLC


COUNSEL FOR DEBTOR

R. SCOTT SHUKER, ESQ.
DANIEL A. VELASQUEZ, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801


September 7, 2017

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO. 6:17-bk-04444-CCJ

THE GARDENS, LLC                                    CHAPTER 11

      Debtor.

_____/

## PLAN OF REORGANIZATION FOR THE GARDENS, LLC

THE GARDENS, LLC (the "Debtor"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.    **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.    **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or

a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed

by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no

objection to the allowance thereof has been interposed within any applicable period of limitation

fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the

Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

7.    **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506

of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor

the amount of the Claim is challenged as provided herein.

8.    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such

Unsecured Claim is or becomes an Allowed Claim.

9.    **Asset Resolution** means Asset Resolution, LLC.

10.    **Assets** means each and every item of Property of the Estate and every interest of the

Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or

unliquidated, whether or not controlled by the Debtor, and includes without limitation:  (a) all real

and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action,

whether arising by statute or common law, and whether arising under the laws of the United States,

other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract

rights, or other rights, including without limitation rights to payment, contribution or distribution,

whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other

contracts, agreements, licenses, and leases.

11.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

12.     **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

13.     **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:17-bk-04444-CCJ.

14.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

15.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

16.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

17.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

18.     **Bid Rate** means the rate bid by any purchaser of a tax certificate.

19.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

20.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

20.    **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to: (i) the claims for listed in Debtor's Schedules; and (ii) the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; *provided, however*, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

21.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

22.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

23.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

24.    **Closing** shall mean the execution of all documents necessary to transfer the Sale Property to Lion Financial, LLC which is to occur no later than ninety (90) days after the Effective Date of the Plan.

25.    **CMM** means Commercial Mortgage Managers, mortgage servicer for the Trustee. The term CMM also collectively refers to the Trustee, CMM and Loan Subservicer where appropriate.

26.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

27.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

28.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

29.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

30.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

31.    **Contribution Funds** shall mean the payment funded by Mr. Granatstein and Ms. Unger in an amount equal to:  (i) Allowed Administrative Claims, and (ii) Ten Thousand and No/100 Dollars ($10,000.00).

32.    **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

33.    **Cross Mortgage** means the first mortgage on the Cross Parcel.

34.    **Cross Parcel** means the vacant parcel of real property located at 492 N. Orange Blossom  Trail, Orlando, Florida 32805 (Parcel No: 27-22-29-2946-01-001).

35.    **Debtor** means The Gardens, LLC.

36.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

37.    **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

38.    **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

39.    **Distribution** means a distribution to the Holders of Allowed Claims.

40.    **Effective Date** means the date upon which this Plan becomes effective upon satisfaction of the conditions set forth in Article VIII, Section (E) herein.

41.    **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

42.    **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

43.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

44.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

45.     **Foreclosure Action** means the commercial foreclosure action commenced against the Debtor and Parliament in Orange County, Florida in the case styled: *Commercial Mortgage Managers, Inc. v. The Gardens, LLC, et al.*, Case No: 2014-CA-007857-O.

46.     **GRP** means Gardens Recovery Partners, LLC.

47.     **Holder** means the holder of a Claim or Interest, as applicable.

48.     **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

49.     **Individual Mortgagees** means the parties listed on the attached **Exhibit "A"**.

50.     **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

51.     **Interest** means Debtor's legal and equitable interests in all exempt and non-exempt Assets.

52.     **Judgment** means the final judgment of foreclosure entered in the Foreclosure Action in favor of CMM/GRP in the amount of $13,732,506.58.

53.     **Judgment Lien** means the lien against the Debtor's Real Property.

54.     **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that

such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

55. **Lion Financial** means Lion Financial, LLC.

56. **Loan Subservicer** means GRP.

57. **Main Property** means 296 timeshare weekly intervals which are owned by Borrower in 18 condominium units in the The Gardens Phase I, a Condominium, as recorded in O.R.B. 8604, Page 1626, Public Records of Orange County, Florida ("Weekly Intervals"), including Borrower's interest in the The Gardens Resort Condominium Association, Inc. (the "Condo Association"), as well as Borrower's interest (which is subject to any rights of the Condo Association or unit owners that have priority over Borrower's rights) in the common areas, main building and underlying land upon which the 18 condominium units are located (together called the "Land and Building," and together with the Weekly Intervals, the "Main Property").

58. **Mortgage Participants** shall refer to those parties listed on the attached **Exhibit "B"**.

59. **Mr. Granatstein** shall refer to Martin Donald Granatstein, manager of the Debtor.

60. **Ms. Unger** shall refer to Susan Unger.

61. **New Mortgage** means the first priority mortgage lien on the Main Property provided by Debtor to CMM/GRP in accordance with the terms of Class 5 of the Plan.

62. **New Note** means the new renewal note in the amount of $300,000.00 provided by Debtor to CMM/GRP in accordance with the terms of Class 5 of the Plan.

63. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and

unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

64. **Parking Lot** means the parcel of real property located at 300 N. Orange Blossom Trail, Orlando, Florida 32805 (Parcel No: 27-22-29-7609-00-010).

65. **Parliament** shall mean Parliament Partners, Inc.

66. **Parliament House** shall mean the Parliament House Resort located at 410 N. Orange Blossom Trail, Orlando, Florida 32805.

67. **Parliament Mortgage** means the mortgage dated October 30, 2015 recorded in the Official Records of Orange County, Florida at Book 11009 and Page 2607.

68. **Parliament Investors Mortgage** means the mortgage dated November 3, 2015 recorded in the Official Records of Orange County, Florida at Book 11009 and Page 4364.

69. **Person** means "person" as defined in Bankruptcy Code § 101(41).

70. **Personal Property** means all tangible personal property of the Debtor.

71. **Petition Date** means July 3, 2017, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

72. **Plan** means this Chapter 11 Plan of reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

73. **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

74. **Points** means the timeshare points associated with a Weekly Interval.

75. **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

76.     **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

77.     **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

78.     **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

79.     **Pro Rata** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

80.     **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

81.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

82.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

83.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

84.     **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date. Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

85.     **Real Property** shall collectively refer to the Main Property, the Parking Lot, the Trustee's Lot and the Cross Parcel.

86.     **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.

87.     **Sale** shall mean the sale of the Sale Property to Lion Financial, LLC for $1,600,000.00.

88.     **Sale Proceeds** shall mean the net proceeds recovered by the Debtor from the Sale of the Sale Property for the benefit of his bankrupt estate.

89.     **Sale Property** shall collectively refer to the Parking Lot, the Trustee's Lot and the Cross Parcel.

90.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

91.     **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

92.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

93.    **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

94.    **Settlement Agreement** means the written agreement by and between the Debtor and CMM/GRP which contemplates the sale of the Parking Lot, the Trustee's Lot and the Cross Parcel for $1,600,000.00 to Lion Financial.  The Settlement Agreement is attached as **Exhibit "B"** to the Disclosure Statement.

95.    **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid *ad valorem* taxes.

96.    **The Condo Association** shall mean The Gardens Resort Condominium Association.

97.    **Trustee** means William A. Leonard, Jr., chapter 7 trustee for the estate of Asset Resolution.

98.    **Trustee's Lot** means the parcel of real property located at 424 N. Orange Blossom Trail, Orlando, Florida 32805 (Parcel No: 27-22-29-2946-01-000).

99.    **Trustee's Mortgage** means the mortgage on the Trustee's Lot.

100.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

101.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

102.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq.* and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

103.    **Weekly Intervals** means the 296 timeshare weeks owned by the Debtor.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Secured Claims.

    1.    Class 1 – Orange County Tax Collector (Real Property Taxes – Trustee's Lot).

Class 1 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2010 through 2016. The Class 1 Claim is secured by a statutory property tax lien on the Trustee's Lot. Class 1 is Unimpaired.

    2.    Class 2 – Orange County Tax Collector (Real Property Taxes – Cross Parcel).

Class 2 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2010 through 2016. The Class 2 Claim is secured by a statutory property tax lien on the Cross Parcel. Class 2 is Unimpaired.

    3.    Class 3 – Orange County Tax Collector (Real Property Taxes – Main Property.

Class 3 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for ad valorem real property taxes for 2012 through 2016. The Class 3 Claim is secured by a statutory property tax lien on the Main Property. Class 3 is Impaired.

    4.    Class 4 – Orange County Tax Collector (Real Property Taxes – Parking Lot).

Class 4 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2007 and 2012 through 2012. The Class 4 Claim is secured by a statutory property tax lien on the Parking Lot. Class 4 is Impaired.

5.      Class 5 – Allowed Secured Claim of Asset Resolution, LLC/Commercial Mortgage Managers.

Class 5 consists of the Allowed Secured Claim of William A. Leonard, as Chapter 7 Trustee for the estate of Asset Resolution, LLC (the "Trustee"), Commercial Mortgage Managers, Inc. ("CMM"), as servicer for the Trustee, and Gardens Recovery Partners, LLC ("GRP") (Trustee, CMM and GRP shall be collectively referred to herein as GRP where appropriate). The Allowed Class 5 Claim relates to the Judgment Lien and certain mortgage obligations held by Asset Resolution, LLC and the individual Mortgage Participants.  .Class 5 is Impaired.

6.      Class 6 – Individual Mortgagees

Class 6 consists of the purported secured claims of the Individual Mortgagees. Class 6 is Impaired.

7.      Class 7 – WPC I, Inc., d/b/a Winer Park Construction (Claim No. 2-1).

Class 7 consists of the Allowed Secured Claim of WPC I, Inc. The Class 7 claim is secured by a recorded judgment lien against the Debtor's Assets. Class 7 is Impaired.

8.      Class 8 – Lion Financial, LLC.

Class 8 consists of the Allowed Secured Claim of Lion Financial, LLC. The Class 8 Claim is secured by a fourth priority mortgage lien on Debtor's Real Property. Class 8 is Impaired.

9.      Class 9 – Lufti Investment Co., Inc.

Class 9 consists of the Allowed Claim of Lutfi Investment Co., Inc. The Class 9 Claim is secured by a second priority mortgage lien on the Debtor's Real Property. Class 9 is Impaired.

10.    <u>Class 10 – Parliament Investors, LLC</u>.

Class 10 consists of the Allowed Secured Claim of Parliament Investors, LLC. The Class 10 claim is secured by a fifth priority mortgage lien on the Debtor's Real Property. Class 10 is Impaired.

B.    <u>Unsecured Claims</u>.

<u>Class 11 – Allowed General Unsecured Claims</u>.

Class 11 consists of all Allowed General Unsecured Claims. Class 11 is Impaired.

C.    <u>Equity Interests</u>.

<u>Class 12 – Equity Interests of the Debtor</u>.

Class 12 consists of all ownership interests currently issued or authorized in the Debtor. Class 12 is Impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.    <u>Administrative Expense Claims</u>.

Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any holder of a Non-Ordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms. The Allowed Administrative Claims shall be paid from cash on hand or through pre-petition retainers. The Debtor estimates Administrative Claims to be approximately $60,000.00 ($30,000.00 over the advance retainers).

B.    <u>Priority Tax Claims</u>.

Except to the extent that the Holder and the Debtor or Reorganized Debtor have agreed or may agree to different treatment, each Holder of an Allowed Priority Tax Claim given priority under 11 U.S.C. § 507(a)(8) shall be paid in full through equal monthly payments of principal and interest at the Statutory Rate, with such payments ending on the date that is 60 months after the Petition Date. The filed amount of Priority Tax Claims is currently $0.00. The Debtor estimates the Allowed Amount of such Priority Tax Claims will not exceed $0.00, however; should any Priority Tax Claims become Allowed in an amount exceeding $0.00, such claims shall be treated in accordance with the provisions of this paragraph.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS

There are two (2) classes of Unimpaired Claims as follows:

A.    <u>Classes of Unimpaired Claims.</u>

1.    <u>Class 1 – Orange County Tax Collector  (Real Property Taxes – Trustee's Lot)</u>

Class 1 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2010 through 2016  in the aggregate amount of $370,734.93. The Class 1 Claim is secured by a statutory property tax lien on the Trustee's Lot. In full satisfaction of its Class 1 Allowed Secured Tax Claim, the Orange County Tax Collector shall retain its lien on the Trustee's Lot until Closing of the Sale and shall receive payment of its Class 1 Allowed Secured Tax Claim, in full, from the Sale Proceeds. Class 1 is Unimpaired.

2.       <u>Class 2 – Orange County Tax Collector (Real Property Taxes – Cross Parcel)</u>

Class 2 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2010 through 2016 in the aggregate amount of $30,383.40. The Class 2 Claim is secured by a statutory property tax lien on the Cross Parcel. In full satisfaction of its Class 2 Allowed Secured Tax Claim, the Orange County Tax Collector shall retain its lien on the Cross Parcel until Closing of the Sale and shall receive payment of its Class 2 Allowed Secured Tax Claim, in full, from the Sale Proceeds. Class 2 is Unimpaired.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES.

A.       <u>Determination of Allowed Amounts.</u>

Treatment prescribed for Claims in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VIII, Section J, of this Plan, and other applicable law.

There are ten (10) Classes of Claims or Interests that are Impaired.  Treatment for these classes is as follows:

B.    Secured Claims.

1.    Class 3 – Orange County Tax Collector (Real Property Taxes – Main Property)

Class 3 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2012 through 2016 in the aggregate amount of $334,434.73. The Class 3 Claim is secured by a statutory property tax lien on the Main Property. In full satisfaction of its Class 3 Allowed Secured Tax Claim, the Orange County Tax Collector shall retain its lien on the Main Property and, commencing on the Effective Date, shall receive monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule bearing interest at the Bid Rate, with a maturity date sixty (60) months after the Petition Date.  Class 3 is Impaired.

2.    Class 4 – Orange County Tax Collector (Real Property Taxes – Parking Lot)

Class 4 consists of the Allowed Secured Tax Claim of the Orange County Tax Collector for *ad valorem* real property taxes for 2007 and 2012 through 2016 in the aggregate amount of $115,279.52. The Class 4 Claim is secured by a statutory property tax lien on the Parking Lot. In full satisfaction of its Class 4 Allowed Secured Tax Claim, the Parking Lot will be sold to Lion Financial, but the Orange County Tax Collector shall retain its lien on the Parking Lot and, commencing on the Effective Date, shall receive monthly payments from Lion Financial of principal and interest pursuant to a twenty-five (25) year amortization schedule bearing interest at the Bid Rate, with a maturity date sixty (60) months after the Petition Date with such payment obligations assumed by Lion Financial in connection with the Sale.  Class 4 is Impaired.

3.    Class 5 – Allowed Secured Claim of Asset Resolution,
LLC/Commercial Mortgage Managers

Class 5 consists of the Allowed Secured Claim of William A. Leonard,

as Chapter 7 Trustee for the estate of Asset Resolution, LLC (the "Trustee"), Commercial Mortgage

Managers, Inc. ("CMM"), as servicer for the Trustee, and Gardens Recovery Partners, LLC ("GRP")

(Trustee, CMM and GRP shall be collectively referred to herein as GRP where appropriate). The

Allowed Class 5 Claim relates to the Judgment Lien and certain mortgage obligations held by Asset

Resolution, LLC and the individual mortgage participants (the "Mortgage Participants"). Pursuant to

the Settlement Agreement, and in full satisfaction of GRP's Allowed Class 5 Claim, GRP shall retain

an Allowed Secured Claim in the amount of $1,500,000.00 which shall be repaid as follows pursuant

to the Settlement Agreement:

(i)    On or before 90 days after the Effective Date of the Plan, the Parking Lot, Trustee's

Lot, and Cross Parcel (collectively the "Sale Property"), but not the Main Property,

shall be sold to a third party (unaffiliated with the Debtor or Guarantor) and the

Judgment Lien shall be released on the Sale Property in exchange for payment to

GRP, at closing, of $1,200,000.00 ("Sale Release Price"). In connection with such

sale, Trustee will release the Trustee's Mortgage on the Trustee's Lot. Debtor

understands that GRP, CMM, and Trustee cannot release the mortgage (the "Cross-

Mortgage") on the Cross Parcel. However, GRP, CMM, and Trustee make no

warranty or representation with respect to the Cross Mortgage or with respect to the

title to any of the Sale Property, or any other warranties or representations of any

kind.

(ii)      Upon closing of the Sale Property, Borrower shall execute and deliver to GRP a new renewal note ("New Note") in the amount of $300,000.00 and a first priority mortgage lien on the Main Property (including the Weekly Intervals), as well as Borrower's interest in the personal property in the units (GRP acknowledges that the personal property in The Gardens Condominium units is owned by the Condo Association), to provide additional security for the remaining portion of the Secured Claim owed to GRP (the "New Mortgage"). The New Note shall be co-signed by Guarantor and Unger, jointly and severally, and will accrue regular non-default interest at the rate of 5% per annum, and upon default, at the highest rate allowed by Florida law. GRP shall also retain its existing Mortgages, Judgment, and Judgment Lien to secure said reduced amounts, and may reschedule the foreclosure sale under its Judgment and/or pursue its other remedies without further order of the bankruptcy court in the event of a default by Borrower under the confirmed Plan or under the New Note, New Mortgage, or this Agreement, until such time as GRP provides a release (or with respect to a specifically released portion of the property, a partial release) of such mortgages or liens pursuant to the terms hereof. Provided, however, notwithstanding any other term or provision of this Agreement, the Sale Property shall be released from the existing Mortgages, Judgments, Lien, and Judgment upon payment of the Sale Property Release Price to GRP and execution and delivery of the New Mortgage and New Note pursuant to the Plan. Upon issuance of the New Mortgage, Borrower shall provide title insurance with respect to the New Mortgage at Borrower's expense.

(iii)    During the first six months after the Effective Date of the Plan, the New Note will not have any required monthly payments if there are no sales of or timeshare "points" associated with a Weekly Interval (the "Points"). However, the Debtor shall diligently market and attempt to sell the Points, and GRP shall, at the closing of each sale of a Points, receive $1,200.00 cash for each sale of Points corresponding to one Weekly Interval ("GRP Portion"). Each buyer shall be a *bona fide* purchaser unaffiliated with Debtor or Guarantor. Upon receipt by GRP of the GRP Portion for each sale of Points corresponding to one Weekly Interval, GRP shall promptly provide a written Partial Release of Mortgage in recordable form executed by an authorized officer of GRP to release such Weekly Interval from the New Mortgage. In the event that, after a default by the purchaser, Debtor or its affiliates retake ownership of any Weekly Interval or Points, or any paper secured by such Weekly Interval or Points, Debtor shall assign or mortgage the same to GRP as additional collateral for the New Note. Following the first six-month period referenced in paragraph 2.1(iv) of the Settlement Agreement, for each month thereafter, Debtor shall continue to make payments on the same terms as those described in paragraph 2.1(iv), for each Weekly Interval or Points sold, except that if the payments to GRP during any given month are less than $5,000.00, then Debtor shall pay an additional sum to GRP at the end of each such month to increase the amount paid to GRP in that month to $5,000.00

(iv)    The Balance of the New Note shall balloon, mature, and come due in full, forty-eight (48) months after the date of issuance of the New Note. In addition, the New Note, shall permit acceleration in the event of default under the New Note, New Mortgage,

the Settlement Agreement, or the Plan. Upon payment of all sums due or to come due to GRP under the New Note, New Mortgage, or the Settlement Agreement, CMM and GRP shall satisfy the New Note, New Mortgage, the secured portion of the Judgment, Renewal Mortgage, Mortgage 1, Amendment 1, Amendment 2, and Mortgage Modification (as defined in the Settlement Agreement) that are held by GRP.

(v)     Pursuant to the Plan, CMM, GRP, and Trustee shall retain their existing mortgages and liens until they are voluntarily released by them as provided in the Settlement Agreement, and shall retain their existing rights, as modified herein. The Sale Property shall be released from all mortgages, liens, and judgments on the payment of the Sale Property Release Price to GRP.  The parties understand that pursuant to Section 3-310 of Florida's version of the UCC, the acceptance by CMM and GRP of the New Note does not discharge the Judgment or the obligations on which the Judgment is based, but rather suspends them until the New Note comes due. In the event of a default under the New Note, CMM and/or GRP may enforce the New Note and/or the Judgment and the underlying obligations upon which the Judgment is based. In the event that CMM or the GRP seeks to enforce the Judgment, Borrower consents to the entry of an order rescheduling the sale. If CMM or the GRP determines that the amount of the Judgment should be reduced to account for any payments made after entry of the Judgment, then Debtor consents to such modifications of the Judgment upon the filing of an affidavit by GRP or CMM setting forth the reasons for such modification.

(vi)    Reorganized Debtor shall, or shall cause the Association to maintain the Main Property, including the Weekly Intervals, and to keep the Main Property and Weekly Intervals properly insured at its own expense, with a lender loss payee clause listing GRP as a payee (to the extent that CMM or GRP has an insurable interest), and shall provide proof of the payment of the premium to CMM or GRP.

(vii)    At its own expense, Borrower shall pay or cause to be paid all real estate taxes and other assessments (including condominium and maintenance assessments) upon all timeshare intervals and common areas within The Gardens Condominium (including the Main Property and Weekly Intervals) on a going forward basis, and the accrued taxes and other accrued assessments shall be paid under the Plan as provided in Chapter 11. Borrower shall provide proof of such payment to CMM or GRP. In the event that any person seeks to enforce a tax lien or other lien superior to GRP's Secured Claim, such shall constitute a default of Borrower's obligations under the Plan, this Agreement, and the documents evidencing the Loan.

(viii)    The Parliament Vacation Club, LLC, shall be responsible for funding the operating expenses of the Reorganized Debtor's timeshare business, and for marketing the Points pursuant to a subordinated management and marketing contract, the terms of which shall be subject to approval by CMM, GRP, and Trustee, as well as the Bankruptcy Court with jurisdiction over the Bankruptcy Case. Reorganized Debtor shall provide a proposed budget to GRP at the commencement of each calendar quarter. CMM or GRP shall have access to the books and records of Reorganized Debtor and its affiliates to confirm that the operating expenses have been paid. Reorganized Debtor and its affiliates may enter into a lease to use the Parking Lot

after the sale of the Sale Property, and CMM, GRP, and the Trustee do not object to such lease, provided that the terms are based on market rates and will not burden Reorganized Debtor so much that it renders the Plan unfeasible.

(ix)    GRP shall be entitled to assert an unsecured deficiency claim under the Plan for the amount of its Judgment in excess of the Secured Claim, and shall vote in favor of the Plan, provided that the Plan complies with the terms of this Agreement. However, when and if Borrower pays the Sale Property Release Price and delivers to GRP the executed New Note and New Mortgage, the unsecured deficiency against the Borrower shall be discharged, and on a going forward basis, shall receive no further payment under the Plan on account of its unsecured deficiency, but this discharge shall not affect the liability of the Guarantor and Unger under the New Note or under the Guaranty and Guaranty Judgment. Trustee shall be entitled to an unsecured claim for the obligation secured by the Trustee's Mortgage, and shall vote in favor of the Plan, provided that the Plan complies with the terms of this Agreement. However, when and if Borrower pays the Sale Property Release Price and delivers to GRP the executed New Note and New Mortgage, the Trustee's unsecured claim against the Borrower shall be discharged, and on a going forward basis, shall receive no further payment under the Plan on account of its unsecured claim, but this discharge shall not affect the liability of the Guarantor and Unger under the New Note or under the Guaranty and Guaranty Judgment.

4.    Class 6 – Individual Mortgagees

Class 6 consists of the purported secured claims held by the individual mortgagees listed on the attached **Exhibit "A"** (the "Individual Mortgagees"). Debtor asserts that the

26

Holders of Class 6 Claims are not entitled to an Allowed Secured Claim as such claims are invalid and barred by the applicable statute of limitations and statute of repose. In addition, the liens of the Holders of Class 6, if any, are junior to the real estate taxes and the rights, and liens of the Holders of Class 5 Claims and any secured claims of the Holders of Class 6 are accordingly valued at zero ($0).

Accordingly, the Individual Mortgagees do not hold valid claims, or mortgage interests, or liens against Debtor's Real Property and such claims mortgage interests, and liens, shall, in any event, be extinguished on the Effective Date. In addition, Holders of Class 6 Claims are not entitled to an Allowed Unsecured Claim against Debtor; however, to the extent the Holders of Class 6 Claims are determined to hold Allowed Unsecured Claims, such claims will be entitled to share in the distribution afforded to Class 11. Class 6 is Impaired.

5.    Class 7 – WPC I Inc., d/b/a Winter Park Construction (Claim No. 2-1)

Class 7 consists of the Allowed Secured Claim of WPC I, Inc., ("WPC") in the amount of $59,847.08. The Class 7 claim is secured by a recorded judgment lien against the Debtor's Assets. Pursuant to Bankruptcy Code Section 506, the Class 7 Claim of WPC is wholly unsecured. Thus, on the Effective Date, all liens held by the Class 7 Claimant shall be extinguished and WPC's Allowed Claim in the amount of $59,847.08 shall be treated as an Allowed Unsecured Claim pursuant to the terms of Class 11. Class 7 is Impaired.

6.    Class 8 – Lion Financial, LLC.

Class 8 consists of the Allowed Secured Claim of Lion Financial, LLC ("Lion Financial") in the amount of $3,900,000.00. The Class 8 Claim is secured by a fourth priority mortgage lien on Debtor's Real Property. Pursuant to Bankruptcy Code Section 506, the Class 8 Claim of Lion Financial is wholly unsecured. On the Effective Date, all mortgages and liens held by the Class 8 Claimant shall be extinguished. Additionally, Class 8 shall not be entitled to payment in

accordance with the terms outlined in Class 11 below.Rather, on the Effective Date, the Reorganized Debtor shall execute an unconditional and irrevocable guaranty of payment in favor of Lion Financial, guaranteeing payment of Parliament Partners, Inc.'s obligations under the Parliament Mortgage dated October 30, 2015 recorded in the Official Records of Orange County, Florida at Book 11009 and Page 2607. Class 8 is Impaired.

       7.     <u>Class 9 – Lutfi Investment Co., Inc.</u>

       Class 9 consists of the Allowed Claim of Lutfi Investment Co., Inc. ("Lufti") in the amount of $500,000.00. The Class 9 Claim is secured by a second priority mortgage lien on the Debtor's Real Property. Pursuant to Bankruptcy Code Section 506, the Class 9 Claim of Lufti is wholly unsecured. Thus, on the Effective Date, all mortgages/liens held by the Class 9 Claimant shall be extinguished and, to the extent Lufti has an Allowed Claim, such claim shall be treated as an Allowed Unsecured Claim pursuant to the terms of Class 11. Class 9 is Impaired.

       8.     <u>Class 10 – Parliament Investors, LLC</u>

       Class 10 consists of the Allowed Secured Claim of Parliament Investors LLC ("Parliament Investors") in the amount of $525,000.00. The Class 10 Claim is secured by a fifth priority mortgage lien on Debtor's Real Property. Pursuant to Bankruptcy Code Section 506, the Class 10 Claim of Parliament Investors is wholly unsecured. On the Effective Date, all mortgages and liens held by the Class 10 Claimant shall be extinguished. Additionally, Class 10 shall not be entitled to payment in accordance with the terms outlined in Class 11 below.Rather, on the Effective Date, the Reorganized Debtor shall execute an unconditional and irrevocable guaranty of payment in favor of Parliament Investors, LLC, guaranteeing payment of Parliament Partners, Inc.'s obligations under the Parliament Investors Mortgage dated November 3,

2015 recorded in the Official Records of Orange County, Florida at Book 11009 and Page 4364. Class 10 is Impaired.

        C.    <u>Unsecured Claims</u>.

            a.    <u>Class 11 – Allowed General Unsecured Claims.</u>

Class 11 consists of all Allowed General Unsecured Claims against the Debtor. In full satisfaction of their Allowed Class 11 Claims, holders of such claims shall receive a *pro rata* share, with Allowed Class 11 Claims, of the Contribution Funds, but only after payments to Allowed Administrative Claims have been paid in full. Distribution to Holders of Class 11 Claims shall occur on the Effective Date. Class 11 is Impaired.

        D.    <u>Equity Interests</u>.

            a.    <u>Class 12 – Equity Ownership Interests in the Debtor.</u>

Class 12 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall be extinguished, and 100% of the Interests in the Reorganized Debtor shall be vested in Mr. Granatstein and Ms. Unger, tenants by the entireties, in exchange for their funding of the Contribution Funds. Class 12 is Impaired.

**ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS**.

The Plan provides the Debtor shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected or subject to a filed motion to reject by such date, then such unexpired lease or executory contract shall be deemed assumed. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 and attached hereto as **Exhibit "C"**, are the only executory contracts to which

the Debtor was a party as of the Petition Date, and there are no monetary or non-monetary defaults to cure.

## ARTICLE VII – MEANS OF IMPLEMENTATION.

A.    $1,600,000 Sale to Lion Financial, LLC.

The Plan is premised on the closing of the Sale of the Sale Property for $1,600,000.00 to Lion Financial, LLC. The Plan contemplates the Debtor will utilize the Sale Proceeds to pay its creditors in accordance with the treatment outlined above in Article IV. Specifically, Debtor anticipates the Sale will result in a net benefit to the estate of $1,600,000.00 (the "Sale Proceeds), $400,000.00 of which will be distributed to pay the outstanding secured tax claims described in Classes 1 and 2, with the balance of the Sale Proceeds distributed to GRP in accordance with the terms outlined in Class 5 above. Additionally, in connection with the Sale, the Reorganized Debtor will enter into a sale-leaseback arrangement with Lion Financial pursuant to which the Reorganized Debtor will retain full possession and use of the Parking Lot on terms equivalent to those outlined in Class 4 for the payment of the Orange County Tax Collector's Secured Tax Claim.

B.    Funds Generated During Chapter 11.

Income generated by the Debtor during the pendency of his Chapter 11 case through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

C.    Management and Control of the Reorganized Debtor.

a. Management. The operations of the Reorganized Debtor shall be overseen by its officers and manager(s), which shall be substantially the same as the management staff as the Debtor.

The powers of the manager(s) of the Reorganized Debtor shall be substantially the same as the powers of the management team of the Debtor.

      b. <u>Managers</u>. The Manager(s) of the Reorganized Debtor shall remain the same as the managers of the Debtor. The Managing Member of the Reorganized Debtor shall be Mr. Granatstein.

D.    <u>Contribution Funds.</u>

The equity of the Reorganized Debtor will be vested in Mr. Granatstein and Ms. Unger, tenants by the entirety, in exchange for payment in an amount equal to: (i) Allowed Administrative Claims, and (ii) Ten Thousand and No/100 Dollars ($10,000.00).

E.    <u>Procedures For Resolving Disputed Claims.</u>

1.    <u>Prosecution of Objections to Claims.</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of

claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

   2.  Estimation of Claims.

    Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

   3.  Cumulative Remedies.

    In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed

Administrative Claim or Disputed Claim for purposes related to allocations, distributions, and voting under the Plan.

4.    <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.    <u>Allowance of Claims</u>.

(i)    <u>Disallowance of Claims</u>.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor reserves and shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

(ii)     Allowance of Claims.

Except as expressly provided in the Plan, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim.

6.     Controversy Concerning Impairment.

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE VIII – MISCELLANEOUS.

A.     Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court including, without limitation, any act regarding the Sale. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan, including, without limitation, any act regarding the Sale.

B.    Vesting of Assets.

Upon the Effective Date, all assets retained by the Reorganized Debtor (including the Main Property) shall vest in the Reorganized Debtor free and clear of any and all liens, claims, and encumbrances except for such liens, claims, and encumbrances specifically preserved in the Plan.

C.    Post-Confirmation Status Report.

Within 90 days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

D.    Preservation, Prosecution, and Defense of Causes of Action.

Except as set forth herein, upon Confirmation, the Debtor and the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor or the Bankruptcy Estate. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and collection; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtor deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

E.    Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval.

F.    Conditions to Effectiveness.

The Effective Date shall not occur until: (i) the entry of the Confirmation Order by the Bankruptcy Court and (ii) expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such order. The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

G.    Exculpation from Liability.

The Debtor, the Reorganized Debtor, and his Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided, however,* that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and his respective agents have or obtain pursuant to any provision of the Code or other applicable

law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's officers or directors shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

H.    Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

I.    Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

J.    Modification of Plan.

The Debtor may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

K.    Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtor or the Reorganized Debtor, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 5 Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.      To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor.

L.     Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

M.     Cramdown.

The Debtor reserves the right to seek confirmation of this Plan under § 1129(b) of the Code.

N.     Discharge.

As of the Effective Date and pursuant to § 1141 of the Bankruptcy Code, Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h) and 502(i) of the Code, whether or not:

1.     A proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code.

2.     A Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or

3.     The Holder of a Claim or Interest based upon such debt has accepted the Plan.

O.     Notices.

All notices required or permitted to be made in accordance with the Amended

Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed

by United States Mail to the following:

> Counsel for the Debtor:
>
> R. Scott Shuker, Esquire
> Latham, Shuker, Eden & Beaudine, LLP
> 111 N. Magnolia Ave., Suite 1400
> Orlando, Florida 32801
>
> Debtor:
>
> The Gardens, LLC
> 410 N. Orange Blossom Trail
> Orlando, Florida 32805
>
> United States Trustee:
>
> George C. Young Federal Building
> 400 West Washington Street, Suite 1100
> Orlando, Florida  32801

P.     Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on

an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from

a domestic bank, at the option of the Reorganized Debtor.

Q.     Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in

making Distributions shall comply with all tax withholding and reporting requirements imposed on

him by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such

withholding and reporting requirements.   The Reorganized Debtor may withhold the entire

Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

R.    Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

S.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 8 Claims in accordance with the provisions of this Plan. However, checks issued by the Reorganized Debtor with respect to Allowed Class 8 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Class 8 Claim with respect to the check originally issued.

T.    Transfer Taxes.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**RESPECTFULLY SUBMITTED** this 7th day of September 2017, in Orlando, Florida.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@lseblaw.com
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for the Debtor*

**PLAN OF REORGANIZATION**

**EXHIBIT A**

## INDIVIDUAL MORTGAGE HOLDERS

David P Betteridge
977 Hano Circle
Ivins, UT 84738

Richard D Boren
as Trustee Boren Liv Trust
311 Woodland Avenue
Andalusia, AL 36420-5234

June F Brehm
103 Montesol Drive
Henderson, NV 89012

Robert E. Burnett, Jr.
15102 Kenly Way
Birmingham, AL

Kathleen F Dellarusso
as Trustee of 1996 Seafidi
Childrens Trust
2897 Rio Vista Drive
Minden, NV 89423

Mark L & Sandy K Eames
10400 Dunsford Drive
Lone Tree, CO 80124-9796

Robert Essaff, as Trustee of the Essaff Family Trust dated 6/18/02
2860 Heybourne Road
Minden, NV

Byrne E. Falke, Jr., as Trustee of the Byrne E. Falke Living Trust dated 6/3/03
505 Alpine View Dr.
Incline Village NV

Byrne E. Falke, Sr., as Trustee of the Byrne E. Falke Living Trust
335 Ski Way, Unit 332
Incline Village NV

Nancy L Gouveia, as Trustee
of Nancy L Gouveia Trust
1543 Alisal Avenue
San Jose, CA 95125

1

Nancy L. Griffin: last known address was 6025 Pintail Lane, Citrus Heights, CA
6025 Pintail Lane
Citrus Heights, CA

Larry E. Hanan as Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02
4410 Endicott Place
Tampa, FL

David M. Jacobson, as Trustee of the Jacobson Family Trust Dated 2/13/97
1219 Oakview Way
San Diego, CA

Cristina Jacobson, as Trustee of the Jacobson Family Trust Dated 2/13/97
1219 Oakview Way
San Diego, CA

Aimee E. Kearns, as Trustee of the KM Trust
5886 N. Bonita Vista Street
Las Vegas, NV

Stephen V Kowalski
29202 Posey Way
Rancho Palos Verdes, CA 90275

Leo Mantas
1620 Little Raven St, #701
Denver, CO  80202

Morris Massry
255 Washington Ave Ext
Albany, NY 12205

Rudy Leroy McTee, as Trustee of the R & S McTee 1995 Trust dated 4/20/95
1638 Broken Bow Drive
Gardnerville, NV

Sharon Kaye McTee, as Trustee of the R & S McTee 1995 Trust dated 4/20/95
1638 Broken Bow Drive
Gardnerville, NV

Henry E & Ruth V Pattison
5219 W Avenue, L14
Lancaster, CA 93536

Phil & Loy E Pfeiler
51414 Pet Drive
Aguila, AZ 85320

Linda L Pinnell IRA
9915 Saddleback Drive
Lakeside, CA 92040

Dennis Raggi
20140 N Painted Cove Lane
Surprise, AZ 85387-7264

Joseph F. Sparks, as Trustee of The Joseph F. and Marcia A. Sparks Revocable
Family Trust dated 12/11/03
1401 W. Charleston Blvd., Unit A210
Las Vegas, NV

Marcia A. Sparks, as Trustee of The Joseph F. and Marcia A. Sparks Revocable
Family Trust dated 12/11/03
1401 W. Charleston Blvd., Unit A210
Las Vegas, NV

Harold & Diana Thompson
HA & DC thompson Rev Trust
973 Petes Way
Sparks, NV 89434

Donald S. Tomlin, as Trustee of the Donald S. Tomlin and Dorothy R. Tomlin
Revocable Trust dated 10/24/79
15316 Sky High Road
Escondido, CA  92025

Dorothy R. Tomlin, as Trustee of the Donald S. Tomlin and Dorothy R. Tomlin
Revocable Trust dated 10/24/79
15316 Sky High Road
Escondido, CA  92025

B.A. Towle & Deborah Towle
1120 Donner Pass Rd, #142
Truckee, CA  96161

USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC
2 North Central Ave, Suite 1200
Phoenix, AZ  85004

3

USA Commercial Mortgage
112 E Pecan St, Ste 1800
San Antonio, TX  78205

Diane F Weiland, Trustee
FBO GR & DF Weiland Trust
977 Hano Circle
Ivins, UT 84738

LD & DM Wengert, Trustees
Wengert Family Trust
868 Judi Place
Boulder City, NV 89005

RS & S Worthen, Trustees
RS Worthen Family Trust
117 Worthen Circle
Las Vegas, NV 89145

**PLAN OF REORGANIZATION**

**EXHIBIT B**

**COMMERCIAL MORTGAGE MANAGERS, INC**
servicer for Wm Leonard, Trustee

**MORTGAGE PARTICIPANTS**

Ahern, James E.
6766 Runnymede Dr.
Sparks, NV 89436-8444

Bender Family Trust
Harriet Bender, Trustee
5461A Paseo Del Lago E.
Laguna Woods, CA 92637-7320

Blevins, John A. & April D.
704 Fife St.
Henderson, NV 89134-5556

Byrne E. Falke Living Trust
Byrne E. Falke Sr., Trustee
P.O. Box 3774
Incline Village, NV 89450-3774

Byrne E. Falke Living Trust
Byrne E. Falke Jr., Trustee
P.O. Box 5676
Incline Village, NV 89450-5676

David Rosner Rev Trust
David Rosner, Trustee
71 Trinidad Dr.
Tiburon, CA 94920-1077

E. C. Taylor Sep Prop Tust
Evalyn C. Taylor, Trustee
1908 Rolling Dunes Ct.
Las Vegas, NV 89117-6916

Eugene W. Cady & Sandra Cady Trust
Eugene & Sandra L. Cady, Trustees
20 Skyline Circle
Reno, NV 89509-3963

Everett H. Johnston Family Trust
Everett H. Johnston, Trustee
P.O. Box 3605
Incline Village, NV 89450-3605

Fladager, Graydon L. & Cynthia A.
2235 Longwood Dr.
Reno, NV 89509-5153

Gary I. & Barbara Miller Trust
Gary & Barbara Miller, Trustees
2832 Tilden Ave
Los Angeles, CA 90064-4012

Gold Plated LLC
Dwight Harouff, Manager
5680 Ruffian St.
Las Vegas, NV 89149-1261

Gunning, Toby A.
7245 Brockway Ct.
Reno, NV 89523-3247

Hawley Family Trust
Stephen & Sidney Hawley, Trustees
9008 Emerald Hill Way
Las Vegas, NV 89117-5740

Hudson, Suzann L.
1540 Candelero Dr
Walnut Creek, CA 94598-1006

Jacobson Family Trust
David & Cristina Jacobson, Trustees
12219 Oakview Way
Sand Diego, CA 92128-6301

James H. Lidster Family Trust
Phyllusu M. Lidster, Trustees
2958 San Mateo Drive
Minden, NV 89423-7812

Jos & M. A. Sparks Rev Fam Trust
Joseph & Maria Sparks, Trustees
2163 Lima Loop Pmb 071025
Laredo, TX 78045-6420

McMullin , Joseph & Pearl
1887 Washington St. N.
Twin Falls, ID 83301-3055

Paul G. Chelew
P.O. Box 370
Dayton, NV 89403-0370

Paul G. Chelew Char. Reminder Unitr. III
Alta Bates Summit Foundation Trustee
2855 Telegraph Ave
 Ste 601
Berkeley, CA 94705-1161

Pfeiler, Phil L. Pfeiler & Loy E.
 806 Buchanan Blvd Ste 115 Pmb #249
Boulder City, NV 89005-2144

Ryan, Ronald & Mary
 217 Pancho Via Dr
Henderson, NV 89012-5016

Stater Family Ltd. Partnership
5760 Topaz St
Las Vegas, NV 89120-2429

Stimpson, Gregory & Carrie
2665 Firenze Dr.
Sparks, NV 89434-2135

T.D.S. Rev Family Trust
T. Dwight Sper & Bonnie J. Sper, Trustees
1005 Cypress Ridge Ln
Las Vegas, NV 89144-1425

Tate, Luther E.
678 Wells Rd
Boulder City, NV 89005-1717

Toby Lee Rosenblum
1882 Colvin Ave
St. Paul, MN 55116

Webber Family Trust
Patricia Ann Webber
9072 Prosperity Way
Ft. Myers, FL 33913-7095

Willis, John L. Jr.
 3N075 Woodview Drive
West Chicago, IL  60185

**PLAN OF REORGANIZATION**

**EXHIBIT C**

Fill in this information to identify the case:

Debtor name    **The Gardens, LLC**

United States Bankruptcy Court for the:    MIDDLE DISTRICT OF FLORIDA

Case number (if known)    **6:17-bk-4444-CCJ**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

2. **List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Master Points Affiliation Agreement** | |
|---|---|---|---|
| | State the term remaining | **July 2004** | **RCI, LLC**<br>**7 Sylvan Way**<br>**Parsippany, NJ 07054** |
| | List the contract number of any government contract | | |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy